UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 22-3065 _____     _____ Caption [use short title] _____

Motion for: Expedited Appeal and Emergency Declaration

and Injunction pending appeal

_____

_____

Set forth below precise, complete statement of relief sought:

Plaintiffs emergency motion for expedited appeal and requests for preliminary declaration

and injunction of NYC Vaccine Orders & Mayors 2/6 + 2/8 Orders - the OSHA Act  overturned

Jacobson & Smith & the Act expressly prohibits the use of illegal vaccines & bans any

sanctions against employees who refuse the Covid vaccine that falls below the OSHA

minimum standards. NYC Vaccine Order & Mayors order of 2/8 is preventing

Plaintiffs from returning to work without waiving their statutory private right to backpay

Women of Color for Equal Justice,et al. v NYC et

MOVING PARTY: Women of Color For Equal Justice, et al.     OPPOSING PARTY: City of New York, et al.

[✓] Plaintiff     [ ] Defendant

[✓] Appellant/Petitioner     [ ] Appellee/Respondent

MOVING ATTORNEY: Jo Saint-George     OPPOSING ATTORNEY: Elisheva Rosen

[name of attorney, with firm, address, phone number and e-mail]

14216 Dunwood Valley Dr.     New York City Law Department - Labor & Employment Law

Bowie, MD 20721     100 Church Street, RM 2-316, NY, NY 10007

602-326-8663 - jo@woc4equaljustice.org     212-356-3522 - erosen@law.nyc.gov

Court- Judge/ Agency appealed from: E.D.N.Y. Hon. Eric Komitee

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes     [ ] No (explain): _____
_____

Opposing counsel's position on motion:
[ ] Unopposed [✓] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
[✓] Yes [ ] No [ ] Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below? [✓] Yes [ ] No
Has this relief been previously sought in this court? [ ] Yes [✓] No
Requested return date and explanation of emergency: 2/13/2023

Expedited Declaration & Injunction is needed because the City repealed the Vaccine Mandates
but are now mandating Plaintiffs to waive their claims to backpay & damages & requiring
them to reapply for their jobs they have not be terminated from to return to work. This new condition is
a continuing deprivation of their fundamental rights to refuse the vaccine keeping them from returning to work.

Is oral argument on motion requested? [✓] Yes [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [✓] No  If yes, enter date: _____

Signature of Moving Attorney:

/s/ Jo Saint-George_____ Date: 2/10/2023_____ Service by: [✓] CM/ECF [ ] Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

WOMEN OF COLOR FOR EQUAL JUSTICE, et al.

                          Plaintiffs,

    v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS, COMISSIONER ASHWIN VASAN, MD, PHD DEPARTMENT OF HEALTH AND MENTAL HYGIENE, DEPARTMENT OF EDUCATION, AND DOES 1-20

                          Defendants.

Case No: 22-3065

## PLAINTIFF-APPELANT'S DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. 26.1

Pursuant to Fed. R. App. P. 26.1, the undersigned, as attorneys for Plaintiff-Appellant Women of Color for Equal Justice, et al. certify that, to the best of our knowledge, Plaintiff-Appellant has no parent corporation, and there is no publicly held corporation owning 10% or more of its stock.

Dated: February 10, 2023                    WOMEN OF COLOR FOR EQUAL
                                            JUSTICE


                                            By:/s/ Jo Saint-George

                                            Jo Saint-George
                                            14216 Dunwood Valley Dr.
                                            Bowie, MD 20721-1246
                                            jo@woc4equaljustice.org
                                            Phone: 301-447-3600
                                            www.woc4equaljustice.org

                                            *Attorney for Women of Color for
                                            Equal Justice and Plaintiffs similarly
                                            situated.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

WOMEN OF COLOR FOR EQUAL JUSTICE, et al.

                             Plaintiffs,

          v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS, COMISSIONER ASHWIN VASAN, MD, PHD DEPARTMENT OF HEALTH AND MENTAL HYGIENE, DEPARTMENT OF EDUCATION, AND DOES 1-20

                            Defendants.

Case No: 22-3065

**Emergency Motion**

_____

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-APPELLANTS EMERGENCY MOTION FOR AN EXPEDITED APPEAL AND AN EMERGENCY DECLARATION AND INJUNCTION PENDING APPEAL

Jo Saint-George, Esq.
14216 Dunwood Valley Dr.
Bowie, MD 20721-1246
jo@woc4equaljustice.org
Phone: 301-447-3600
www.woc4equaljustice.org

*Attorney for Women of Color for Equal Justice, Plaintiffs and similarly situated*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................... 1

II. BACKGROUND ....................................................................................... 7

    A. Factual Background ……………………………………………… 7

    B. Historical Background - OSHA Overuled *Jacobson* 50 Years Ago …………13

        1. The OSH Act Abrogated State & Municipal Police Power to Criminalize The Fundamental Right To Refuse Vaccines……………..13

        2. The OSHA Act Consensus Standard Also Limited State Police Power…………………………………………………………17

        3. The OSHA Respiratory Standards Render Vaccines Unnecessary…….17

III. LEGAL STANDARD OF REVIEW....................................................... 19

IV DECLARATORY JUDGEMENT ACT STANDARD …………………………..

V. ARGUMENT........................................................................................ 20

    A. OSH Act Legalized The Fundamental Right to Refuse Vaccines .................. 20

    B. The OSHA Act Provides An Expressed Right of Action For ........................21 Constitutional Tortuous Wrongful Discharge

VI. STRICT SCRUTINY APPLIES TO PLAINTIFFS SECTION 1983 CLAIMS....25

VII. THE SMITH RATIONAL BASIS TEST DOES NOT APPLY TO THE FUNDAMENTAL RIGHT TO REFUSE VACCINES ..........................................25

VIII. CONCLUSION ....................................................................................26

# TABLE OF AUTHORITIES

**Constitutional Provision**

Article 1, Section 8 of the Commerce Clause …………………………………………..14

**Statutes**

OSH Act 1970 Public Law 91-596, 29 USC 652 §3(3) and §6(a) …................................3

29 USC §651(b) ….......................................................................................................... 15

29 USC 654 §5(a)(2)….................................................................................................... 18

29 USC 655 §6(a)(6) & (d)….......................................................................................... 14

29 U.S.C.A. §201 et seq. Fair Labor Standards Act (FLSA)………………………… 15

29 USC 660 §11 ….................................................................................................3,4,21,22,23

29 USC 667 §18(b) …....................................................................................................15, 16

29 USC 669 §20(a)(5)…..................................................................................................4, 5, 22

New York City Civil Service Law §75…........................................................................4,12

New York City Education Law §6512 …........................................................................4,12

New York City Education Law §3020………………………………… …  4, 12

New York City Education Law §6520 & §6521 ….........................................................4,12

New York City Administrative Code §16-101 …………………………………..4 & 12

New York Human Rights Law (NYCHRL) §8-107 …………………………………..4

**Regulations**

29 CFR §19.10.9 …........................................................................................................7,8,18,19

29 CFR §1910.132 ........................................................................7,9,18,19

29 CFR §1910.134 ........................................................................7,9,18,19

ETS §1910.502(c) .................................................................................. 10

## United States Supreme Court Cases

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)…………………… 1,2,3,4,5,13,14,17

*Employment Division, Oregon v. Smith*, 494 U.S. 872 (1990)..............................1,25,26

*Gade v. National Solid Wastes Management Assn*., 505 U.S. 88 (1992).............3,16,21

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 201 L.Ed.2d 376 (2018)…………5

*Opp Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor*, 312 U.S. 657, 61 S.Ct. 524 (1941). …………………………………………….. 15

*City of Boerne v. Flores*, 521 U.S. 507, (1997) …………………………………2,15,23

*Nary v. Haitian Refugee Center, Inc*, 498 U.S. 479, 493 (1991) …………………. ….3

Carey v. Piphus, 435 U.S. 247, 253 (1979). . . . . . . . . . . .. . .. . . . . . . . . . . .. …….3

*Cruzan v. Director, Missouri Dep't o Health*, 497 U.S. 261 262 (1990)……..4,5,25,26

*Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 561 U. S. 477 (2010)…………………………………………………………………..6

Dep't of Commerce v. New York, 139 S. Ct. 2551, 204 L.Ed.2d 978 (2019)………..11

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)……………………..19

*Armstrong v. Exceptional Child Center, Inc*., 575 U.S. 320, 332 (2015)……………20

*Gonzaga Univ. v Doe*, 536 U.S. 273, 283 (2002) …………………………………20

*Touche Ross Co v. Redington*, 442 U.S. 560, 568, (1979)……………………………20

*United States v. Ballard, 322 U.S. 78* (1944) …………………………………………24

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (2012) ……25

**Federal Court Cases**

*Reich v. Cambridgeport Air Systems, Inc.* 26 F. 3d 1187 (1st Cir. 1994)…………5,22

*Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 410 P.3d 32, 228

(Cal. 2018)………………………………………………………………………………15

*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*.,

32 Cal.3d 762, 772, 654 P.2d 157 (1982)……………………………………………15

*Steel Inst. of N.Y. v. City of N.Y.,* No. 12-276 (2nd. Cir. 2013)……………………… 16

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd*. , 880 F.3d 620, 627 (2d Cir. 2018) ….19

*Commack Self-Serv. Kosher Meats*, 680 F.3d 194, 213 (2nd Cir. 2012)…………….....22

## I.    PRELIMINARY STATEMENT

This emergency motion for declaratory and preliminary injunctive relief pursuant to the Declaratory Judgment Act (DJA) 28 U.S. Code § 2201 and §2202 is one of first impression that makes two facial constitutional challenges to the "authority" of the City of New York ("City") Health Commissioner to issue nine (9) Covid-19 vaccine orders (the "Vaccine Orders"[1]) (Exhibit 1) mandating City employees to take the Covid-19 vaccine or be placed on indeterminate involuntary leave without pay (ILWOP). The two challenges asks this Court to find that the holding in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) regarding compulsory vaccination has been overturned by the passage of the OSH Act and that the rational basis test in *Employment Division, Department of Human Resources of Oregon v. Smith* 494 U.S. 872 (1990) is inapplicable because the right to refuse vaccines is no longer a crime[2] and is a fundamental right under the First Amendment Free Exercise and Due Process Clauses subject to strict scrutiny, which no vaccine can meet.

The first challenge is that the Vaccine Orders (on their face) mandate the use of the Covid-19 vaccine as "safety method" when neither vaccines nor any

---

[1] While the New York City Mayor announced that he will make the Vaccine Orders optional effective on February 10, 2023, the declaration and injunction is still needed because the City is still enforcing it police power to prevent City workers placed in IILWOP from automatically returning to their jobs and to deny City workers backpay due because of the void orders.

[2] See Sherbert v. Verner, 374 U.S. 398, 403-404 (1963) which held that ineligibility for unemployment benefits, based solely on a refusal to violate the Sabbath, has been analogized to a fine imposed on Sabbath worship that violates the First Amendment Free Exercise Clause – the distinction between Sherbert and Smith facts are that the religious practice in question in *Smith* was a crime and the religious practice of observing the Seventh-Day Sabbath from sun down Friday to sun down Saturday according to the Fourth Commandment is in the Bible and Torah has never been a crime.

immunization has ever been approved as "safety methods" by the Occupational Safety and Health Administration (OSHA). Also, vaccines are incapable of meeting Occupational Safety and Health Act (OSH Act) minimum safety standards for preventing the transmission of airborne hazards, including airborne communicable disease like Covid-19. Because the use of the Covid-19 vaccine falls below OSHA minimum standards, neither the City's Health Commissioner nor any employer has authority to mandate any employee or persons in places of business to submit to the illegal Covid-19 vaccine. While the City, along with many public and private employers mandating vaccines as a condition or pre-condition of employment along with legal organizations,[3] believe they have the constitutional right to mandate employees to submit to the illegal Covid-19 vaccine now on in the future based on the holding in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), that "belief" is erroneous. The *Jacobson* decision was overturned over 50-years ago when Congress enacted the 1970 OSH Act minimum safety standards - as was instructed by the Supreme Court in *Jacobson*[4] and later confirmed *City of Boerne v. Flores*, 521 U.S. 507 (1997)[5] - abrogating the police power of states and municipalities to criminalize or sanction in any way individuals who exercise their fundamental right to refuse

---

[3] See American Bar Association, October 21,2021 – "Not Breaking News: Mandatory Vaccination Has Been Constitutional for Over a Century" @ https://www.americanbar.org/groups/litigation/committees/mass-torts/articles/2021/winter2022-not-breaking-news-mandatory-vaccination-has-been-constitutional-for-over-a-century/

[4] Id. at 25.

[5] Held Congress ""Congress certainly can enact legislation enforcing the constitutional right to the free exercise of religion,..."

vaccines. The OSHA Act ban on sanctioning employees also applies to private employers, and in 1992 the Supreme Court held that private employers are prevented from making any unauthorized safety method a condition or pre-condition of employment.[6]

Because the City and many employers around the country are unconscionably enforcing the *Jacobson* and will in the future, Plaintiffs (and all similarly situated employees for which Plaintiffs have requested conditional certification)[7] seek an immediate emergency DJA declaration of rights issued from this Court declaring that any vaccine mandate or vaccine condition for pre- or post-employment by any employer violates federal law and is unconstitutionally void and illegal subjecting all employers to constitutional tort[8] private right of actions for monetary damages and injunctive relief as expressly permitted under the OSH Act 29 U.S.C. Section 11(c). See generally *Nary v. Haitian Refugee Center, Inc*, 498 U.S. 479, 493 (1991)[9]

Plaintiffs second facial constitutional challenge is pursuant to Section 1983 as right of action for the City's continued enforcement of the illegal Vaccine Orders and new orders of February 6 and 8, 2023, under color of law, which now is

---

[6] Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 108 (1992)

[7] See Exhibit 35 - Plaintiffs Motion for declaratory and injunctive relief to the Eastern District Court included a motion for class certification.

[8] See Carey v. Piphus, 435 U.S. 247, 253 (1979) ("The legislative history of [Section] 1983 . . . demonstrates that it was intended to create a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.")

[9] (held: "Because the administrative appeals process does not address the kind of ….. constitutional claims respondents bring in this action, limiting judicial review of these claims to the procedures set forth in § 210(e) is not contemplated by the language of that provision.")

preventing them from returning to work without having to first re-apply for jobs they were not terminated from and waive their claims to backpay and damages. The new employment conditions are also deprivations caused by their exercise of their Free Exercise right to refuse to take the illegal Covid-19 vaccine[10] and deprives them of their right to immediately return to work unvaccinated in violation of the OSH Act 29 U.S.C §669 Section 20(a)(5) and §660, Section 11(c)(1). The Vaccine Orders expressly state that all unvaccinated City employees "must be excluded from premises at which they work beginning November 1, 2021" for failing to provide proof of Covid-19 vaccination (See Exhibit 1) While Plaintiffs have not been legally terminated from their jobs because the New York City Civil Service laws prevent their termination,[11] Plaintiffs have been placed on indeterminate involuntary leave of without pay (ILWOP) denied healthcare, unemployment and retirement benefits and are prevented from returning to their jobs without cost which is their absolute right due to the City's continued enforcement of the illegal Vaccine Orders.

Additionally, Plaintiffs have been subjected to ongoing religious harassment by the City because the City continues to send them letters attempting to coerce

---

[10] *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (Held: A competent person has a liberty interest under the Due Process Clause in refusing unwanted medical treatment. Citing *Jacobson v. Massachusetts*, 197 U. S. 11 1905.
[11] City's progressive discipline law only permits termination if an employee is guilty of a violation of either New York City Education Law §3020, for tenured teachers, New York City Administrative Code §16-101 for Sanitation employees; or New York City Civil Service Law §75 for all City employees.

them to give up their religious beliefs in exchange for their jobs in violation of the New York State Human Rights Law which prohibits employers from engaging in coercive tactics. (NYCHRL §8-107). (See Exhibits 33)   This "quid pro quo" harassment continues wherein on Monday, February 6 and 8, 2023 the City's Mayor Adams announced that Plaintiffs will have to reapply for their jobs and waive their right to backpay and all damages, which are additional unconstitutional burdens on their fundamental right to return to their jobs. (See Exhibits 3 & 4) This is outrageous and a "shock to the conscience" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 201 L.Ed.2d 376 (2018) because the 1st Circuit already held in 1994 that backpay can be awarded for wrongful discharge under OSHA.[12]

Congresses intent to overturn the harsh outcomes from the *Jacobson* decision - as seen in this case - is expressed in the language of the OSH Act Section 20(a) which protects all employees' fundamental Free Exercise right to refuse immunization, which is a fundamental right first recognized by the *Jacobson* court and re-iterated by the Supreme Court in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990) which held that all competent adults have the right to refuse medical treatment regardless of their religious beliefs.

---

[12] See *Reich v. Cambridgeport Air Systems, Inc*. 26 F. 3d 1187, 1190-1191 (1st Cir. 1994)

While Plaintiffs have met their burden of proof for equitable relief, on November 18, 2022, the New York Eastern District Court denied Plaintiffs motions for preliminary injunction and declaratory relief based on two (2) errors, which are reviewable de novo and include, an error of law regarding private rights of action under the OSH Act and error regarding the proper legal standard applicable to Plaintiffs request for relief under the DJA.(Exhibit 5)   The district court incorrectly concluded that the OSH Act does not provide a private right of action, which precluded application of the less strenuous standard under FRCP §57.   The OSH Act expressly permits private rights of action and equitable relief is permissible under the DJA when there is ongoing violations of federal law and constitutional rights that can only be stopped through a <u>prospective</u> injunction and declaration of rights.[13]

Based the ongoing and imminent acts of the City, DJA relief is the only way to halt theses egregious violations by the City and employers around the country. This Court should grant emergency equitable relief as detailed in the proposed orders supporting this motion. Since the Pandemic emergency is over, an injunction, until this Court can resolve the appeal on an expedited basis, would not disrupt the status quo by allowing Plaintiffs and similarly situated employees

---

[13] See *Free Enterprise Fund v.  Public Company Accounting Oversight Bd*., 561 U. S. 477 (2010) (Sotomayor, J. dissenting –"We have thus long entertained suits in which a party seeks prospective equitable protection from an injurious and preempted state law without regard to whether the federal statute at issue itself provided a right to bring an action…").

robbed of such a precious fundamental right to immediately go back to their jobs and immediately receive backpay to recover from the horrific financial and mental damage caused by the tortuous acts of the City, which no amount of money can adequately compensate.

## II.    BACKGROUND

### A.    Factual Background

On March 11, 2020, the World Health Organization declared the infectious airborne Covid-19 virus a Global Pandemic. (Exhibit 6)  According to the CDC, the principal mode by which people are infected with the virus is through exposure to respiratory fluids carrying infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them. (Exhibit 7)

For decades OSHA has had minimum health and safety standards that cover all infectious diseases, specifically airborne infectious diseases. The list of minimum approved safety methods for respiratory disease exclusively include the General Respiratory Standard at 29 CFR §1910.132, the Personal Protective Equipment

standard at 29 CFR §1910.132, the Respiratory Protection standard at 29 CFR §1910.134 and the General duty Clause of the OSH Act 29 U.S.C. §654 (collectively hereinafter "Respiratory Standards"). (Exhibit 8)

In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods.[14] (Exhibit 9) In 2015, OSHA Published, along with the CDC Hospital Respiratory Protection Program Toolkit (which applies to any employer), which outlines the effectiveness of various "respirators" that are required under the OSHA Respiratory regulations, and the publication notes that Powered Air Purifying Respirators (PAPR[15]) and/or N95 Respirator are the best of all respirators for shielding Employees from hazardous airborne viruses because they provide 99.97% effective. (Exhibit 9A, and Exhibit 10, Affidavit of OSHA Expert Hygienist)

OSHA Respiratory regulations also mandate employers to provide "remote work from home" as a safety method when an employer cannot remove an airborne hazard from the workplace atmosphere. (Exhibit 10) Expert cardiologist responsible for OSHA compliance, Dr. Baxter Montgomery, states that "vaccines are a medical treatment" and are not a safety method that shields workers from any airborne hazard

---

[14] See WHO video at https://www.youtube.com/watch?v=10Nfk0zcTAk and Exhibit 17 and See affidavit of Bruce Miller at Exhibit 10
[15] The PAPR does not require the extensive OSHA medical approval and extensive fit testing "process" required under the OSHA Respiratory standard to utilize.

and the vaccine cannot remove viral airborne hazardous from the (Exhibit 11), which all OSHA respiratory safety methods must accomplish to become an authorized safety method pursuant to the regulations in 29 CFR §1910.134. (Exhibit 8)

During the 2020 Covid Pandemic, OSHA published guidelines specific to K-12 schools that mandates schools to follow the OSHA Respiratory Standards, including remote work. (Exhibit 12)

The New York State Department of Labor through its New York Public Employee Safety and Health (PESH) Bureau has an OSHA approved State Plan that expressly states that all New York employers including municipal employers are required to comply with the OSHA Respiratory Standards. (Exhibit 13)

One month after the Covid-19 Pandemic was declared in March 2020, the Ford Motor Company announced that it was increasing the manufacture of Powered Air Purifying Respirators (PAPRs) and N95 Respirators compliant with the OSH Respiratory Standards. (Exhibit 14) On March 27, 2020, the Federal Government passed the CARES Act and issued over $1.4 Billion to the City of New York for Covid-19 expenses, and the CDC provided an additional $25.1 million to the City specifically to assist the City with compliance with OSHA Respiratory Standards. (Exhibit 15)

On May 29, 2020, the Office of the Solicitor for OSHA issued a Response to an Emergency Petition declaring, in summary, that it was not "necessary" for OSHA to issue any Covid-19 related Emergency Temporary Standards (ETS 1920.502), specifically because the existing Respiratory Standards where sufficient for employers to comply with in order to manage the Covid-19 pandemic. (Exhibit 16)

Neither of the OSHA Emergency Temporary Standards issued in June 2021 and in November 2021 mandated employees to take the Covid-19 or lose their jobs nor authorized employers to terminate employees or place them on leave without pay for refusing to submit to the Covid-19 vaccine. (Exhibits 17)

Nevertheless, between July 21, 2021 and December 13, 2002, the City issued the Vaccine Orders that applied to City controlled "workplaces", public accommodations and private workplaces mandating that all City employees, and persons in public businesses and private sector workplaces to provide proof of Covid-19 vaccination and private employers would be fined for non-compliance. (Exhibit 1)

Any City employee who desired to be exempted from the Vaccine Orders was required to first submit to the City through an electronic portal a religious exemption request that required them to disclose their religious affiliation or church membership, provide a detailed explanation of their religious practices and/or

beliefs, and the City required a letter from a clergy before their request would be considered by the City for an exemption, which itself is a federal violation.[16] (Exhibits 18- 30 Affidavits of Plaintiffs.)

All Plaintiffs requested exemptions from the Vaccine Orders on religious grounds were denied the exemption requests. (Exhibits 18-30)   On December 20, 2021 the New York City Law Department Office of the Corporate Counsel issued a legal memorandum titled "Guidance on  Accommodations for Workers" instructing private employers that they could deny requests for religious exemptions from the Vaccine Orders based on the EEOC "undue burden" standard. (Exhibit 31)

The City refused to allow "remote work" for Plaintiffs who were already working "remote" and denied "remote work" to those who requested it with their request for exemption. (Exhibits 22 & 26) After City employees were denied vaccine exemptions, they were locked out their jobs instructed not to return to any City building and they were placed on indefinite involuntary leave without pay (ILWOP) and denied health insurance, retirement and unemployment benefits and the right to work.  (Exhibits 18-30)

---

[16] See *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 204 L.Ed.2d 978 (2019), Footnote 11 "Congress has dictated that 'no person shall be compelled to disclose information relative to his religious beliefs or to membership in a religious body....'"

Many Employees received letters stating that they were "terminated" when not one City employee who refused the vaccine received a formal "misconduct charge" for termination required by the City's Civil Servant progressive discipline laws.[17] (Exhibit 28)

According to the City's former Mayor DeBlasio in a New York Times report, approximately 12,000, or less than 5% of all City employees requested exemptions from the Covid-19 Vaccine Orders based on religious grounds. (Exhibit 32)

For the last year, Plaintiffs have been subjected to harassing and coercive tactics by the City to coerce them to go against their religious beliefs by promising their jobs and benefits in exchange for taking the vaccine. This "starve them out" tactic caused thousands who once stood for their faith to go against their God and take the illegal jab when they ran out of money. (Exhibit 30) Now those still standing, some of which are suffering abject poverty because "food banks" have refused them are demanded to re-apply for their jobs and waive their backpay claims. (Exhibit 3, 4, 33)

---

[17] City employees can only be terminated after filing of charges and progressive discipline pursuant either to - New York City Education Law §3020 for tenured teachers, New York City Administrative Code §16-101 for Sanitation employees and New York City Civil Service Law §75, which applies to all City employees.

**B. Historical Background - OSHA Overruled Jacobson 50 Years Ago**

**1. The OSH Act Expressly Abrogated State & Municipal Police Power to Criminalize the Religious Practice of Refusing Vaccines**

The 10th Amendment grants states and local governments[18] "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Consistent with this Federalist Principal, it was held in *Jacobson v. Massachusetts,* 197 U. S. 11 (1905) that states not only have the general police power to enact criminal laws, but specifically states can enact laws that criminalize religious activity ordinarily protected as a fundamental right by First Amendment Free Exercise Clause. When the *Jacobson* Court upheld the State of Massachusetts criminal prosecution of Mr. Jacobson for refusing the smallpox vaccine as a religious practice, that landmark decision became the foundation for the legal principle that religious practices can be criminalized, specifically the religious practice of refraining from vaccines,[19] so long as the criminal law is "reasonable" for the protection of public health and safety. [20] However, the *Jacobson* decision also provided a roadmap for Congress

---

[18] See Dillion Rule - *Clinton v. Cedar Rapids & M. R. R. Co.*, 24 Iowa 455 (1868) – adopted by the U.S. Supreme Court in *Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907), held in summary that local governments are considered an extension of the state and power is distributed to those local governments according to the state constitution.

[19] Other religious practices like bigamy, smoking peyote and working on Sunday have been criminalized see *Braunfeld v. Brown, 366 U.S. 599 (1961) 1959* - Pennsylvania criminal statute which forbade the retail sale on Sundays of commodities and other specified commodities.

[20] See *Jacobson v. Massachusetts*, 197 U.S. 11, 13 & 26 (1905) - "Jacobson was prosecuted against by a criminal complaint in one of the inferior courts of Massachusetts…. that subjected him to a fine or imprisonment for neglecting or refusing to submit to vaccination…."

to legislate to limit state police power to criminally punish and fine citizens for

their religious practices as stated below:

> "it is for the **legislature**, and not the courts, to determine in the first instance whether **vaccination is or is not the best mode for the prevention** of smallpox and the protection of the public health." Id. at 197. (Emphasis added)

> A local enactment or regulation, even if based on the acknowledged **police powers** of a State, **must always yield in case of conflict with the exercise by the General Government** of any power it possesses under the Constitution, or with any right which that instrument gives or secures. (Emphasis added)

> 65 years later, Congress did overturn the *Jacobson* decision on three (3)

grounds when, it passed, through its Constitutional power under Article 1, Section

8 of the Commerce Clause, the Occupational Safety & Health Act of 1970 (OSH

Act) (Exhibit 34) creating the federal Occupation Safety and Health

Administration (OSHA). First, the OSH Act limited states police power to regulate

in the area of health and safety specifically in places of business and workplaces

affecting interstate commerce and reserved exclusive authority to OSHA's

Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate minimum

health and safety standards and to determine the "practices, means, **methods**,

operations, and processes" to meet the minimum standards. 29 U.S.C. 651 Section

2(b)(5). Specifically, the Secretary was charged "to supply a nationwide floor of

minimally necessary safeguards" that federal, state and private employers and

places of business are mandated to meet for public health and safety. 29 U.S.C. §

651(b) see *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 410

P.3d 32, 228 (Cal. 2018). The OSH Act was enacted "to address the problem of

uneven and inadequate state protection of employee health and safety" and to

"establish a nationwide 'floor' of minimally necessary safeguards". *United Air*

*Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal.3d 762, 772, 654

P.2d 157 (1982)

    The constitutionality of this exclusive authority to set minimum standards

mirrors Congresses power to set "minimum wage standards" in the Fair Labor

Standards Act 29 U.S.C.A. §201 et seq. (FLSA) passed years earlier in 1933. See

*Opp. Cotton Mills v. Administrator of Wage and Hour Division of Department of*

*Labor*, 312 U.S. 657, 61 S.Ct. 524 (1941).   The Supreme Court made clear in *City*

*of Boerne v. Flores*, 521 U.S. 507, (1997), that "Congress can certainly enact

legislation……. enforcing the constitutional right to the free exercise of religion."

    While 29 U.S.C. §667 of the OSH Act expressly reserved to states the right

to assume authority to promulgate new "higher" standards for which OSHA

standards already exist, municipalities do not have the right to regulate below the

"minimum standards as expressed in 29 U.S.C. 667 Section 18 as follows:

    (b) Any State which, at any time, desires to assume responsibility for
    development and enforcement therein of occupational safety and health

standards ……..shall submit a State plan for the development of such standards and their enforcement.

(c) The Secretary shall approve the plan submitted by a State under subsection (b), or any modification thereof, if such plan in his judgement --
(2) provides for the development and enforcement of safety and health standards relating to one or more safety or health issues, **which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 6** which relate to the same issues, … (Emphasis added)

Both the U.S. Supreme Court in *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992) and this Second Circuit in *Steel Inst. of N.Y. v. City of N.Y.,* No. 12-276 (2nd. Cir. 2013) declared, in summary, that municipalities cannot regulate outside the express authority provided by the OSH Act.

While all vaccines obtain federal approval from the Food & Drug Administration (FDA), the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices, " which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).  The FDA does not have authority to regulate methods to be used to provide health and safety in physical places of business and workplaces. Neither does FDA approval of any vaccine, nor does CDC recommendation that the Covid-19 vaccine is "safe and effective", automatically make any vaccine an OSHA approved "safety method."

Moreover the OSH Act does not authorize the Secretary nor employers regulated by the Act to prescribe "medical treatments" to eliminate workplace hazards. The prescribing of vaccine medical treatments is exclusively reserved to physicians and  licensed healthcare workers in the 50 states. It is a felony in New York for any unauthorized person to prescribe a "medical treatment". See New York Education Law §6520& §6521 and §6512

### 2. The OSH Act Consensus Requirement Further Limited State Police Power

Second, Congresses intent to overturn *Jacobson* is manifested by the fact that Section 6(a)&(b) of the OSHA Act requires the OSHA Secretary (when promulgating or modifying standards) to seek consensus on standards with other national organizations including, State or political subdivisions, See *Warren Tech., Inc. v. Ul LLC*, 962 F.3d 1324 (11th Cir. 2020) which must be "based upon research, demonstrations, experiments, and such other information as may be appropriate…." and must seek the "attainment of the highest degree of health and safety protection for the employee, and other considerations shall be the latest available scientific data in the field".

### 3. OSHA's Respiratory Standards Made Vaccines Unnecessary

Finally, *Jacobson* was overturned by Congress when the OSH Act Respiratory standards did not list vaccines as an approved "safety method."   To

specifically address airborne hazards, OSHA only approved the specific methods in the list of Respiratory Standards, that include the OSHA General Duty Clause 29 U.S.C. §654 Section 5, which mandates employers to eliminate any known hazard in the workplace through engineer and administrative methods.

These approved safety methods have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic[21], and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit 8)

The primary objective of the OSHA Respiratory Standards is to implement "practices, means, methods, operations, or processes" that, at minimum, either: 1) remove hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. 29 CFR 1910.132   If a safety method does not meet these two objectives the method cannot meet the minimum safety method standard. Employers are obligated to remove "hazards" not people under the General Duty clause.

---

[21] In 2009 the World Health Organization declared H1N1 a global pandemic – See https://www.youtube.com/watch?v=10Nfk0zcTAk&t=38s

According to medical expert Dr. Baxter Montgomery, who also practices Biblical Plant-Based Lifestyle Medicine[22], vaccines are a "medical treatment" and are incapable of removing airborne contaminates from the air and shielding employees from exposure to airborne contaminants. (Exhibit 34). OSHA expert and Certified Hygienist, Bruce Miller, explains that the OSHA authorized respirators, specifically the Powered Air Purifying Respirators (PAPR) are 99.97% effective at shielding employees from exposure to any airborne hazard, which is the highest level of effectiveness rendering vaccines unnecessary. (See Exhibit 35)

## III. STANDARD OF REVIEW

A district court's denial of a preliminary injunction is reviewed for abuse of discretion but legal conclusions are reviewed de novo, if "(1) it bases its decision on an error of law or uses the wrong legal standard; or (2) it bases its decision on a clearly erroneous factual finding… " *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.* , 880 F.3d 620, 627 (2d Cir. 2018)

## IV. DECLARATORY JUDGMENT ACTION STANDARD OF REVIEW

For a court to issue a declaratory judgment, the Supreme Court has " required that the dispute be 'definite and concrete, touching the legal relations of parties

---

[22] Biblical Plant-Based Lifestyle Medicine is the evidenced based practice of prescribing plant and herb food as medicine consistent with the instructions in Genesis vers 1:29, and 3:18 along with lifestyle interventions, including exercise, rest, natural sunshine, fresh air, clean water, hygiene practices and various forms of fasting to prevent, treat and even reverse chronic and communicable disease including Covid. See Scientific evidence behind THE TEN LAWS of Plant-Based Lifestyle Medicine - https://hbcuplantbasedlifestyle.com/THE-TEN-LAWS-of-Lifestyle-Medicine-Scientific-Evidence.pdf

having adverse legal interests'; and that it be 'real and substantial' . . . .which calls for specific relief through a degree of conclusive character…" *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (internal citations omitted). Whether the City or any employer has the constitutional right to mandate vaccination as a condition of employment and whether employees and persons entering places of business affecting interstate commerce have the right to refuse any vaccination requirement are two of many ongoing controversies raised by this case that needs a DJA determination by this Court.

## V.    ARGUEMENT

### A.    OSH Act Legalized The Fundamental Right To Refuse Vaccines

The OSHA Act legalized the fundamental right of competent adults to refuse vaccines on religious grounds by preventing all sanctions while also providing employees a private right of action when they are discharged for exercising that right. The Supreme Court in *Armstrong v. Exceptional Child Center*, Inc., 575 U.S. 320, 332 (2015) held "that a private right of action under federal law is not created by mere implication, but must be "unambiguously conferred." (citing *Gonzaga* Univ. v Doe, 536 U.S. 273, 283 (2002).  The task of the court "is limited solely to determining whether Congress intended to create the private right of action." *Touche Ross Co v. Redington*, 442 U.S. 560, 568, (1979).

Congresses intent to protect employees right to refuse vaccination is unambiguously expressed in OSH Act at 29 U.S.C. §20(a)(5) and §11(c)(1) as follows:

> **Nothing in this or any other provision of this Act** shall be **deemed to authorize or require** medical examination, **immunization**, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others. See §20(a)(5)[23] (Hereinafter the "Automatic Right to Refuse Vaccines")
>
> No **person shall discharge any employee**………because of the exercise by such employee ……..of **any right afforded by this Act**. §11(c)(1) (Emphasis added)

Section 11(c)(1) essentially provides all employees the right to remain unvaccinated and work by prohibiting any person from discharging an employee for exercising their fundamental right to refuse any vaccine or immunization. The U.S. Supreme Courte expressly stated in *Gade* that employers are prohibited from mandating unauthorized safety methods as a "pre-condition to employment". See *Gade at* 108.

### B. The OSH Act Provides An Expressed Right of Action For Constitutional Tortuous Wrongful Discharge

Congress also made crystal clear that employees have the right to maintain a private right of action for a constitutional torts against "any person" who

---

[23] Because vaccines are incapable of removing any airborne hazard or shielding a person from exposure, there is no circumstances that any vaccine could ever be considered "necessary" to meet the exception.

discharges them for exercising any right under the OSH Act by asserting a claim in federal court without the need to first seek administrative. The 1st Cir. in *Reich v. Cambridgeport Air Systems, Inc.* 26 F. 3d 1187 (1st Cir. 1994) also recognized that the right of action does not require exhaustion of administrative remedies and that punitive damages are permissible under the OSH Act.  This right of action is contained in Section 11(c)(2), as follows:

> Any employee **who believes that he has been discharged** or otherwise discriminated against by any person in violation of this subsection **may**, .. file a complaint with the Secretary alleging such discrimination. (Emphasis added)

The court's role in interpreting statutory clauses is "not to look at the statutory language in isolation, rather, the court considers the language in context…. see *Commack Self-Serv. Kosher Meats*, 680 F.3d 194, 213 (2nd Cir. 2012) Also, the cases relied on by the district court are distinguishable because they did not include the enforcement of ancillary fundamental rights under the Constitution.

The single word "may" clearly establish that Congress did not intend for employees to first exhaust any administrative review process to make a claim for wrongful discharge in Federal Court.  If Congress intended otherwise, they could have used "shall" to preclude any action.  Furthermore, the phrases "no person" in the beginning of Section 11(c)(1) and "any person" in Section 11(c)(2), also

establishes Congress intent to permit claims against "persons," including officials of municipalities.

The right of action in subsection (c) is listed under Section 11 titled "Judicial Review" but is separate from the enforcement powers granted to the OSHA Secretary in Sections 9 and 10 of the OSH Act. The OSHA Secretary cannot promulgate regulations or rules to limit this express private right action absent a Congressional amendment or repeal. Section 11(c) is not a standard subject to the OSHA Secretaries discretion. Section 11(c) is a statutory provision that protects the fundamental rights of employees as the *Boerne* court held Congress had power to do.

Finally, the Equal Employment Opportunity Commission (EEOC) Title VII rules and regulations regarding religious exemptions do not apply to OSHA wrongful discharge claims. While the EEOC is also an agency of the U.S. Department of Labor as is OSHA, neither the EEOC Secretary nor the OSHA Secretary have authority to limit theses rights, including the application of federal general statutes of limitations.

The gross and reckless disregard of the fundamental rights of employees by the City and other employers by applying the EEOC "reasonable accommodation" and "undue burden" standard to vaccine exemption requests gave tyrannical

discretionary power to employers to serve as the "Religious Police" evaluating religious tenants and denying fundamental rights they did not agree with or believed to be "unreasonable" or a "fraud." One Seventh-Day Adventist City employee who practices Biblical Plant-Based Lifestyle Medicine provided evidence that her dietary religious medical practice reduced contracting and experiencing serious Covid-19 by approx. 75% based on three scientific studies and her request was denied depriving her the right to practice her religious medical practice that the journals established is more effectiveness than the vaccine. (See Exhibit 26) This type of "Beast Power"[24] control the Supreme Court ruled 75 years ago was impermissible even for the courts to examine the truth or falsity of religious beliefs. See *United States v. Ballard*, 322 U.S. 78 (1944) Moreover, employers are not doctors and are incapable of evaluating medical exemptions. OSH Act provides automatic exemptions upon request without explanation.

## VI.  STRICT SCRUTINY APPLIES TO PLAINTIFFS SECTION 1983 CLAIMS

Section 1983 creates a cause of action against municipal entities whose officials' actions or policies, under color of state law, deprives another of "any

---

[24] The Pew Research Center "Religious Landscape Study of 2014" on Frequency of Reading Scripture indicates that approx. 53% of the adult U.S. population read scripture https://www.pewresearch.org/religion/religious-landscape-study/frequency-of-reading-scripture/ and by 2016 Pew reported that religious Americans believe that technologies like the Covid-19 vaccine are connected to the "mark of the beast" referenced in the book of Revelation of the Bible https://www.pewresearch.org/fact-tank/2016/07/29/the-religious-divide-on-views-of-technologies-that-would-enhance-human-beings/ -which Rev. 13:16-17 says "And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." Many religious City workers denied the ability to work, to receive unemployment and unable to get jobs outside the city can view the Vaccines Orders from this Biblical perspective.

rights, privileges, or immunities secured by the Constitution and laws" of the United States, 42 U.S.C. Sec. 1983, including the First Amendment right to the free exercise of religion, see, e.g., *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 320, 332 (2012). It has been established that the Vaccine Orders are unconstitutionally void and continue to cause constitutional deprivation of fundamental right. Plantiffs have met their burden of proof and are entitled to declaratory and injunctive relief. While the City's Mayor has announced a possible repeal of the Vaccine Mandates, the repeal does not preclude future mandates absent a declaration of rights by this Court. It was just two years ago that the City issued the measles mandate. Now, the City requires all employees on ILWOP to re-apply for their jobs and waive their right to backpay when the City has no right to muck such demands. The City's continual egregious actions must be stopped!!!!.

## VII. THE SMITH RATIONAL BASIS TEST DOES NOT APPLY TO THE FUNDAMENTAL RIGHT TO REFUSE VACCINES

Because the Supreme Court in *Cruzan at 262* held that the right to refuse medical treatment is a fundamental right outside the Free Exercise context under

the Due Process Clause,[25] [26] and the right to refuse vaccines is no longer

criminalized, the rational basis test for "neutral and generally applicable" in *Smith*

cannot apply.  Any deprivation of those rights must meet strict scrutiny, which no

vaccine can ever do.

## VIII.  CONCLUSION

Declaratory and injunctive relief consistent with the proposed orders is

required.

February 10, 2023                    Respectfully submitted:


By:   /s/Jo Saint-George
Jo Saint-George, Esq,
14216 Dunwood Valley Dr.
Bowie, MD 20721-1246
jo@woc4equaljustice.org
Phone: 301-447-3600
www.woc4equaljustice.org

*Attorney for Women of Color for*
*Equal Justice, Plaintiffs and*
*similarly situated*

---

[25] *Washington v. Glucksberg*, 521 U.S. 702, 744 (1997) (Finding that "Cruzan rested not simply on the common-law right to refuse medical treatment, but—at least implicitly—on the even more fundamental right to make this 'deeply personal decision,'" Citing Cruzan at 289 (O'CONNOR, J., concurring)
[26] See also - *Washington v. Harper*, 494 U.S. 210, 221-22, 229 (1990) (recognizing that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."