

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*

**THE CITY OF NEW YORK**
LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NEW YORK 10007

JONATHAN SCHOEPP-WONG
*Assistant Corporation Counsel*
Phone: 212-356-2275
jschoepp@law.nyc.gov

February 15, 2023

Clerk of the Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

Re:   *Women of Color for Equal Justice v. City of N.Y.*
        Docket No. 22-3065

To the Hon. Clerk of the Court:

Defendants-appellees (collectively, "the City") write to oppose plaintiffs' application for emergency relief.[1] Plaintiffs seek a backwards-looking "emergency declaration" stating that the prior COVID-19 vaccine requirements for City employees—which all agree were amended to no longer require vaccination effective February 10, 2023—violated federal law and were unconstitutional. Plaintiffs also seek an order requiring their immediate reinstatement and backpay. And although they do not even attempt to justify these demands, plaintiffs further seek, *inter alia*, an order requiring the City to permit remote work and to provide air purifiers to all City employees, to disclose the identities and home addresses of every employee who requested any exemption from the City's vaccine requirements, as well as conditional class certification (Proposed Order).

The court should deny the application. Plaintiffs offer no basis for expedited treatment of their motion and come nowhere close to justifying the emergency relief they seek.

---

[1] In accordance with the guidance provided to the City by the office of the Clerk of the Court, the City will respond to plaintiffs' motion for an injunction pending appeal in the ordinary course—here, by February 21, 2023. *See* Fed. R. App. P. 27(a)(3)(A).

## BACKGROUND

### A. The amendment of the challenged vaccination orders

Plaintiffs are a collection of current and former City and Department of Education (DOE) employees who chose not to receive a COVID-19 vaccination despite the City's vaccine mandates or who did so only under alleged duress. Since November 1, 2021, City employees were required to submit proof that they had received the primary series of the COVID-19 vaccine unless eligible for a religious or medical accommodation; for DOE employees, the deadline was October 1, 2021. Those mandates were amended effective February 10, 2023, to make vaccination optional for City employees. Exhibit A (amendment orders).

Following the amendment of the vaccination orders, permanent competitive- and labor-class employees—a group that includes most City employees, but by law excludes pedagogical staff formerly employed by the Department of Education, *see* N.Y. Civ. Serv. Law § 35(g)—are eligible for discretionary reinstatement without backpay in accordance with preexisting regulations. *See* Personnel Rules & Regs. of City of New York (PRR) §§ 6.2.1–6.2.4 (employees who retired or resigned) & § 6.2.6 (employees who were dismissed). These regulations establish time periods in which covered employees may seek reinstatement. *See* PRR §§ 6.2.3, 6.2.6. Those who resigned, retired, or were placed on extended leave without pay must seek reinstatement within four years, depending on their length of service. *See* Exhibit C (FAQ document distributed by City personnel officers); PRR § 6.2.3. Dismissed employees generally have one year from termination in which to seek reinstatement, PRR § 6.2.6, but that period was extended by executive order to March 10, 2023, for anyone dismissed on or after February 11, 2022 and before March 11, 2022. *See* Exhibit B (order extending time). Former employees not eligible for discretionary reinstatement may apply for rehire. *See* Exhibit C (FAQ document).

Although plaintiffs' request for emergency relief appears to rest in part on these preexisting regulations, their motion does not explain how these regulations apply to them. Indeed, plaintiffs appear to deliberately obfuscate their current employment status. While they repeatedly insist that they have been granted "indeterminate involuntary leave without pay" (2d Cir. ECF No. 35 at 1, 4), many of their affidavits suggest they were in fact terminated (*see, e.g.*, Harrington Aff. ¶ 14; Wouadjou Aff. ¶ 26; Martin Aff. ¶ 30). Given this ambiguity, even plaintiffs do not claim that the regulations require them to reapply by any fast-approaching deadline.

### B. Plaintiffs' repeated delays in seeking relief

Although those plaintiffs who refused the vaccine left City or DOE employment by early 2022, they did not file suit until months *after* their separation—on April 19, 2022—and waited another five months—until September 2, 2022—to first seek an

injunction preventing the City from enforcing the vaccine mandates (ECF No. 17). After the court denied that motion, as well as plaintiffs' motion for reconsideration (ECF No. 20), they filed a second preliminary injunction motion on October 26, 2022 (ECF No. 33). That too was denied (ECF No. 37), and the district court also rejected plaintiffs' subsequent motion to amend their papers (ECF No. 38, 39). In doing so, the court cautioned plaintiffs that it would impose sanctions "for engaging in vexatious litigation" should they file yet another motion pressing the same arguments (ECF No. 39 at 10).

Plaintiffs noticed this appeal from the district court's latest denial of their repeated motions on December 2, 2022—two weeks *after* the order issued. They then took no action in this appeal for two months, requiring this Court to set a briefing schedule for them after they failed to file a scheduling notification. Local Rule 31.2(a)(1)(A). Their merits brief is due March 8, 2023, exactly three weeks from today.

## REASONS EMERGENCY RELIEF SHOULD BE DENIED

Plaintiffs now claim that an emergency exists because the vaccine orders that they challenge have been amended to no longer require proof of vaccination. This claim is wholly meritless on its face.

### A. Plaintiffs offer no basis for expedited consideration of their motion.

Plaintiffs have not, and cannot, establish that there is any emergency requiring immediate action by this Court. As of February 10, 2023, the vaccine mandates challenged in this litigation are no longer excluding unvaccinated employees from the workplace, and plaintiffs' injunctive and declaratory claims regarding those orders are moot. *See Reale v. Lamont*, No. 20-3707-cv, 2022 U.S. App. LEXIS 1607 (2d Cir. 2022) (dismissing appeal where executive orders no longer active). Indeed, just two days ago, on February 13, the district court entered *sua sponte* an order to show cause requiring plaintiffs to explain why their demands for injunctive and declaratory relief should not be dismissed as moot.

To the extent plaintiffs rest their application for emergency relief on the terms of the preexisting regulations establishing the process for reinstatement or rehire following the amendment of the orders (*see* 2d Cir. ECF No. 35 at 1 n.1, 3–4), those regulations cannot justify the requested relief for two independent reasons. First, plaintiffs never sought relief based on those regulations in the district court. As a result, they are not properly considered for the first time in this appeal, much less via an emergency motion. *See* Fed. R. App. P. 8(a)(1) (generally requiring party to first move in district court); *Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222, 225 (2d Cir. 2020).

Second, plaintiffs in any event identify no emergency arising from the reinstatement process, and certainly not one requiring this Court to render a decision

on an expedited basis. Plaintiffs (apparently incorrectly) insist that they were each placed on "indeterminate involuntary leave without pay" and not terminated (2d Cir. ECF No. 35 at 4). But even if that were true and their refusal to return may be considered a resignation and not a termination, City employees would be eligible for reinstatement for up to four years after separation depending on their prior length of service. *See* Exhibit C (those employees on extended leave without pay eligible for reinstatement); PRR § 6.2.3.[2]

For those plaintiffs who were terminated, as at least some of their affidavits suggest (*see, e.g.*, Harrington Aff. ¶ 14; Wouadjou Aff. ¶ 26; Martin Aff. ¶ 30), that too creates no emergency. For non-DOE employees, terminated plaintiffs would have one year from their dismissal to seek reinstatement. Exhibit C (FAQs); PRR § 6.2.6.[3] And for those who were terminated between February 11, 2022, and March 10, 2022, the reinstatement application period has been extended to March 10, 2023. Exhibit B (executive order). So even those former employees to whom this provision might apply still need not decide whether to seek reinstatement until the second week of March.

## B. Plaintiffs cannot satisfy the high burden for an emergency preliminary injunction in the first instance from this Court.

Plaintiffs also fail to meet the requirements for a mandatory preliminary injunction, let alone one sought on an emergency basis. In demanding their immediate reinstatement and a sweeping order invalidating "*any* vaccine mandate or vaccine condition … by *any* employer" (2d Cir. ECF No. 35 at 4 (emphasis added)), plaintiffs seek a remedy that is clearly inappropriate for an emergency order. *See Agudath Isr. of Am.*, 980 F.3d at 226 (preliminary injunction on appeal is "drastic" remedy requiring "significantly higher justification" than other interim relief). They do not have standing to seek a declaration regarding vaccine mandates that do not apply to them, and even considering this demand only as it relates to the City's public employee mandates, this relief would alter the status quo by forcing these employees' reinstatement, *Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010), as well as award plaintiffs "all the relief that is sought" without any clear way to undo it should the City prevail on the merits. *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 90 (2d Cir. 2006). Such a remedy should issue only on the clearest demonstration that plaintiffs will succeed on the merits and a "strong showing" of irreparable harm, in addition to proof that

---

[2] As a general matter, tenured DOE pedagogical staff who have resigned may seek reinstatement at any time in accordance with Chancellor's Regulation C-205, subject to a two-year probationary period if the reinstatement is made after more than five years from resignation.

[3] Terminated DOE employees may apply for rehire but are ineligible for reinstatement, and these deadlines thus do not apply to them.

4

an injunction is in the public interest. *State of N.Y. v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

Plaintiffs do not make either showing. Most importantly, they do not even attempt to demonstrate that they will suffer irreparable harm absent emergency relief, and they will not. The vaccination orders challenged in this lawsuit have now been amended to make the vaccines optional, and any harm from plaintiffs' unemployment or placement on leave without pay is redressable through a "monetary award" should they ultimately prevail. *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *see Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) (possibility of "reinstatement and money damages" rendered injury "plainly reparable").

Nor have plaintiffs shown that they will suffer irreparable harm based on preexisting regulations regarding reinstatement or rehire. Any harm resulting from their refusal to seek reinstatement or rehire—despite being afforded extra time to do so—is entirely "self-inflicted" and thus not cognizable. *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 40 (2d Cir. 1993). While plaintiffs disagree with the preexisting rule that they may eventually need to waive "claims for back pay, civil service rights[,] and status for the period of the dismissal," PRR § 6.2.6(b)(1), nothing prevents plaintiffs from submitting an application before executing the waiver to preserve any rights that they may have.

Plaintiffs' dilatory prosecution of this action confirms the lack of both an emergency as well as irreparable harm. The City first announced its intent to require COVID-19 vaccinations on August 23, 2021, and plaintiffs have not worked in their jobs as a result of their refusal to comply since at least early 2022, and for DOE employees, since October 2021. Yet plaintiffs did not file this complaint until April 2022; did not seek a preliminary injunction until five months later, in September 2022; did not appeal the denial of an injunction until three months after that, in December 2022; and did not file this motion for "emergency" relief until last Friday, yet another two months after that. This pattern of delay undercuts any "sense of urgency that ordinarily accompanies a motion for preliminary relief," demonstrating instead that no exigency exists. *Weight Watches Int'l v. Luigino*, 423 F.3d 137 (2d Cir. 2005).

Finally, while defendants will address plaintiffs' likelihood of success more fully in their opposition to plaintiffs' motion for a preliminary injunction pending appeal, Fed. R. App. P. 27(a)(3)(A), plaintiffs' arguments are entirely meritless. As for their claims that the City's vaccine mandates facially violated the First Amendment's Free Exercise Clause (2d Cir. ECF No. 35 at 3, 24–26), this Court has already rejected that argument. *See Kane v. De Blasio*, 19 F.4th 152, 163–67 (2d Cir. 2021) (concluding that City's vaccine orders were neutral, generally applicable, and survived rational-basis review).

5

Nor does their misreading of the Occupational Safety and Health Act ("OSH Act") justify emergency injunctive relief. They claim without support that Section 20(a)(5) of the OSH Act, codified at 29 U.S.C. § 669(a)(5), created an "automatic" right to a religious exemption from any vaccine mandate "upon request without explanation" (2d Cir. ECF No. 35 at 15, 20–21, 24). No court has adopted this reading, and for good reason: this provision, tucked into a subsection describing the Secretary of Health, Education, and Welfare's authority to research occupational safety issues, describes only the scope of what the OSH Act itself may "authorize or require." § 669(a)(5). It says nothing about local vaccine mandates, or the extent to which the City was permitted to evaluate requests for religious exemption. And even if this provision were relevant to the City, it expressly permits the overriding of religious objections "where such is necessary for the protection of the health or safety of others." § 669(a)(5).

Plaintiffs' further contention that the OSH Act also provides a private cause of action pursuant to Section 11(c)(2), codified at 29 U.S.C. § 660(c)(2), is also plainly meritless. This Court has long held that employees do not have a private right of action under the OSH Act. *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983). The text of § 660(c)(2) makes plain why: it permits employees to file unlawful discharge complaints with the Secretary of Labor, who alone must then decide whether to bring an action in the district court. Plaintiffs advance no principled reason that this Court should imply a private cause of action from this clear language granting the Secretary the sole right to sue for violations under the statute. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

For all of these reasons, the Court should deny plaintiffs' emergency application and this Court should consider this appeal in the normal course. Thank you for your consideration.

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Defendants-Appellees

By: _____
Jonathan Schoepp-Wong
Assistant Corporation Counsel

cc:     Counsel of record

6

# EXHIBIT A

**ORDER OF THE BOARD OF HEALTH
RESCINDING ORDERS REQUIRING COVID-19 VACCINATION
IN CHILD CARE AND EARLY INTERVENTION PROGRAMS,
FOR NONPUBLIC SCHOOL STAFF, AND FOR
INDIVIDUALS WORKING IN CERTAIN CHILD CARE PROGRAMS**

**WHEREAS,** on March 25, 2020, the Commissioner of Health and Mental Hygiene ("Commissioner") declared the existence of a public health emergency within New York City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 3.01(d) of the Health Code, when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared, the Commissioner is authorized to issue orders and take actions that are deemed necessary for the health and safety of the City and its residents; and

**WHEREAS,** on September 12, 2021, the Commissioner issued, and on September 17, 2021, the Board of Health ratified and continued, an Order requiring staff of early childhood programs or services that are provided under contract with the Department of Education or the Department of Youth and Community Development to provide proof of COVID-19 vaccination (the "September 12, 2021 Order"); and

**WHEREAS,** on November 17, 2021, the Commissioner issued, and on November 19, 2021 the Board of Health ratified and continued, an Order requiring COVID-19 vaccination and face coverings in child care and Early Intervention programs (the "November 17, 2021 Order"), which  was modified by the Board of Health on July 21, 2022, to rescind the mask requirement (the "July 21, 2022 Order"); and

**WHEREAS,** on December 2, 2021, the Commissioner issued, and on December 20, 2021, the Board of Health ratified and continued, an Order requiring COVID-19 vaccination for nonpublic school staff (the "December 2, 2021 Order"); and

**WHEREAS,** as of January 26, 2023, more than 7.5 million City residents, representing 90% of residents of all ages, have received at least one dose of vaccination against COVID-19, with more than 81% of residents having completed a primary series of vaccination, and 58% of children ages 5 to 12 years have received at least one dose and 51% have completed a primary series of vaccinations; and

**WHEREAS,** high vaccination rates correlate with lower rates of hospitalization and death and the high rate of vaccination among City residents has proven effective in lessening the burden of COVID-19 on the City's healthcare system; and

**WHEREAS,** on September 20, 2022, based on guidance from New York State, the Commissioner issued an Order to Rescind the Covid-19 Vaccination Requirement for Participation in High Risk Extracurricular Activities, which was ratified and continued by the Board of Health on October 25, 2022: and

**WHEREAS**, on October 25, 2022, the Board of Health rescinded, as of November 1, 2022, the December 13, 2021 Order to Require COVID-19 Vaccination in the Workplace, which had required non-governmental workers to provide proof of COVID-19 vaccination said rescission which took effect November 1, 2022;

**NOW THEREFORE BE IT RESOLVED**, the Board of Health hereby orders that the September 12, 2021 Order, the November 17, 2021 Order as modified by the July 21, 2022 Order, and the December 2, 2021 Order are **RESCINDED**.

Dated: February 9, 2023

**ORDER OF THE BOARD OF HEALTH
TO AMEND THE REQUIREMENT FOR
COVID-19 VACCINATION FOR CITY EMPLOYEES
AND EMPLOYEES OF CERTAIN CITY CONTRACTORS**

**WHEREAS,** on March 25, 2020, the Commissioner of Health and Mental Hygiene ("Commissioner") declared the existence of a public health emergency within New York City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared, the Commissioner is authorized to issue orders and take actions that are deemed necessary for the health and safety of the City and its residents; and

**WHEREAS,** on October 20, 2021, the Commissioner issued an "Order to Require COVID-19 Vaccination for City Employees and Certain City Contractors" that required all City employees, except certain Department of Correction employees and certain employees of some City contractors, to provide proof to the agency or office where they work that they had been vaccinated against COVID-19, and required certain employees of some City contractors to provide the same proof to their employer (the "October 20, 2021 Order"); and

**WHEREAS,** on October 31, 2021, the Commissioner issued a "Supplemental Order to Require COVID-19 Vaccination for City Employees and Employees of Certain City Contractors," delaying until November 8, 2021, application of the October 20, 2021 Order for certain employees or contractors, and requiring additional City contractors not covered by the October 20, 2021 Order to ensure that certain of their employees, provide proof that they had been vaccinated against COVID-19 (the "October 31, 2021 Order"); and

**WHEREAS,** on November 1, 2021, the Board of Health ratified and continued both the October 20, 2021 Order and the October 31, 2021 Order; and

**WHEREAS,** as of February 1, 2023, 331,955 City employees, representing 96% of all City employees, have completed a primary series of vaccination, and high vaccination rates correlate with lower rates of hospitalization and death; and

**WHEREAS,** as of January 26, 2023, more than 6.6 million adults residing in New York City, representing 99% of all such adults, have received at least one dose of vaccination against COVID-19, and more than 5.9 million adults residing in New York City, representing 90% of all such adults, have completed a primary series of vaccination, and high vaccination rates correlate with lower rates of hospitalization and death; and

**WHEREAS,** the high rate of vaccination among adults in New York City has proven effective in lessening the burden ofCOVID-19 on the City's healthcare system;

**NOW THEREFORE BE IT RESOLVED**, the Board of Health hereby orders that the October 20, 2021 Order, and the October 31, 2021 Order, as ratified and continued by the Board of Health on November 1, 2021, are hereby **AMENDED** as follows:

1. Paragraph 3 of the October 20, 2021 Order is **REPEALED**, so that a City employee who does not provide the required proof of vaccination as described in paragraph 2 of that Order no longer need be excluded from the premises at which they work.

2. Paragraph 4 of the October 20, 2021 Order, and paragraph 2 of the October 31, 2021 Order, are **MODIFIED**, so that a City human services contractor or other City contractor described in those paragraphs no longer needs to require their covered employees to provide proof of vaccination against COVID-19.

Dated: February 9, 2023

**ORDER OF THE BOARD OF HEALTH**
**AMENDING COVID-19 VACCINATION REQUIREMENTS**
**FOR DEPARTMENT OF EDUCATION**
**EMPLOYEES, CONTRACTORS, VISITORS AND OTHERS**

    **WHEREAS,** on March 25, 2020, the Commissioner of Health and Mental Hygiene ("Commissioner") declared the existence of a public health emergency within New York City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

    **WHEREAS**, pursuant to Section 3.01(d) of the Health Code, when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared, the Commissioner is authorized to issue orders and take actions that are deemed necessary for the health and safety of the City and its residents; and

    **WHEREAS,** on September 15, 2021, the Commissioner issued, and on September 17, 2021, the Board of Health ratified and continued, an Order requiring proof of COVID-19 vaccination by September 27, 2021, for Department of Education ("DOE") employees, visitors to school buildings, charter school staff, and individuals who work in-person in a DOE or charter school setting or DOE building ("September 15, 2021 Order"); and

    **WHEREAS,** on September 28, 2021, the Commissioner extended the deadline by which DOE employees, visitors to school buildings, charter school staff, and individuals who work in-person in a DOE or charter school setting or DOE building were required to comply with the September 15, 2021 Order ("September 28, 2021 Order"), which extension was ratified and continued by the Board of Health on October 18, 2021; and

    **WHEREAS,** as of January 26, 2023, more than 7.5 million City residents, representing 90% of residents of all ages, have received at least one dose of vaccination against COVID-19, with more than 81% of residents having completed a primary series of vaccination; among 5- to 12-year-olds, 58% have received at least one dose and 51% have completed a primary series; among 13- to 17-year-olds, 93% have completed at least one dose and 83% have completed a primary series; and

    **WHEREAS,** as of February 1, 2023, 171,371 DOE employees, representing 99% of all DOE employees, have completed a primary series of vaccination; and

    **WHEREAS,** high vaccination rates correlate with lower rates of hospitalization and death, and the high rate of vaccination among City residents has proven effective in lessening the burden of COVID-19 on the City's healthcare system; and

    **WHEREAS,** on September 20, 2022, based on guidance from New York State, the Commissioner issued an Order to Rescind the Covid-19 Vaccination Requirement for Participation in High Risk Extracurricular Activities, which was ratified and continued by the Board of Health on October 25, 2022;

    **NOW THEREFORE BE IT RESOLVED**, the Board of Health hereby orders that the September 15, 2021 Order, as amended by the September 28, 2021, Order is further **AMENDED** as follows:

1. Paragraph 1 of the September 15, 2021 Order, as amended by the September 28, 2021 Order, is amended to **REPEAL** the requirement for new DOE staff and new City employees to provide proof of vaccination and **REPEAL** the requirement for staff of any charter school and staff of contractors working in DOE schools or buildings to provide proof of vaccination to their employer, and to **AMEND** the requirement that DOE staff and City employees who worked in-person in a DOE school setting, DOE building, or charter school setting were required to provide proof of vaccination to the DOE or their employer by October 1, 2021 or prior to beginning their employment, so that if any current staff or employee did not provide such proof, they are no longer required to do so.

2. Paragraph 3 of the September 15, 2021 Order, requiring visitors to DOE school buildings to have received at least one dose of a COVID-19 vaccine, as amended by the September 28, 2021 Order, is **REPEALED**.

3. Paragraph 4 of the September 15, 2021 Order, relating to remote participation in public meetings and hearings in DOE school buildings, is **REPEALED**.

Dated: February 9, 2023



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

## EXECUTIVE ORDER NO. 25

February 6, 2023

## REVOCATION OF EXECUTIVE ORDERS RELATING TO NEW HIRE VACCINATION REQUIREMENT

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1. Executive Order No. 75, dated August 2, 2021, as amended by Executive Order 76, dated August 17, 2021, is hereby revoked.

§ 2. This Order shall take effect on February 10, 2023.

Eric Adams
Mayor

# EXHIBIT B

Case 22-3065, Document 37, 02/15/2023, 3469682, Page16 of 23



## EMERGENCY EXECUTIVE ORDER NO. 331

### February 9, 2023

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, dated March 12, 2020, and extended most recently by Emergency Executive Order No. 315, dated January 20, 2023, remains in effect; and

WHEREAS, this Order is given because of the propensity of the virus to spread person-to-person, and also because the actions taken to prevent such spread have led to property loss and damage; and

WHEREAS, Executive Order No. 25, dated February 6, 2023, rescinded the requirement for prospective City employees to be vaccinated against COVID-19 as of February 10, 2023; and on February 9, 2023, the Board of Health resolved to make COVID-19 vaccination optional for certain City and DOE employees; and

WHEREAS, pursuant to paragraph 6.2.6 of the Personnel Rules and Regulations of the City of New York ("PRR"), a person who was dismissed from a permanent competitive or labor class position in an agency under the jurisdiction of the Commissioner of Citywide Administrative Services may submit a written application for reinstatement in accordance with the Rule, and is eligible for discretionary reinstatement for a period of one year only from the date of dismissal; and

WHEREAS, certain employees were dismissed from their positions effective February 11, 2022 for failing to provide proof of vaccination against COVID-19, and now may be eligible to apply for reinstatement pursuant to PRR Rule 6.2.6, but would need adequate time to do so;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Case 22-3065, Document 37, 02/15/2023, 3469682, Page17 of 23

Section 1. I hereby order that section 1 of Emergency Executive Order No. 327, dated February 4, 2023, is extended for five (5) days.

§ 2. I hereby suspend paragraph 6.2.6(b)(1) of the PRR, to the extent necessary to allow a person who was dismissed on or after February 11, 2022, but prior to March 10, 2022, from a permanent competitive or labor class position in an agency under the jurisdiction of the Commissioner of Citywide Administrative Services for failure to provide proof of vaccination against COVID-19, to submit a written application for reinstatement, which shall be otherwise in accordance with Rule 6.2.6, on or before March 10, 2023.

§ 3. I hereby direct the Fire and Police Departments, the Department of Buildings, the Sheriff, and other agencies as needed, to enforce the directives set forth in this Order in accordance with their lawful authorities, including Administrative Code sections 15-227(a), 28-105.10.1, and 28-201.1, and section 107.6 of the Fire Code. Violations of the directives set forth in this Order may be issued as if they were violations under Health Code sections 3.07 and 3.11, and enforced by the Department of Health and Mental Hygiene or any other agency.

§ 4. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric Adams
Mayor

2

# EXHIBIT C

updated 2/6/23

## FAQ regarding New York City Employees and the
## COVID-19 Vaccine

### Definitions

**Rehire:** Refers to the process to be taken for former employees to become active employees after termination.  All former employees referenced in this document are eligible for rehire by a city agency.

**Reinstatement:**  Refers to reappointment to the former civil service title held by the employee.

### Vaccine Mandate Details

1. **What is the Vaccine Mandate?**

   Since November 1, 2021, City employees have been required to submit proof that they have received the primary series of the COVID-19 vaccine, per a series of Commissioner of Health Orders. The COVID-19 vaccine requirement applied to current city and DOE employees, nonpublic school staff, early childcare and daycare staff, prospective City employees, as well as visitors to Department of Education (DOE) school buildings.

   The Executive Orders 75 and 76 mandating that all new City employees be vaccinated is also rescinded.

   On February 6, 2023, Mayor Adams announced the City's decision to rescind its vaccine mandate. As of February 10, 2023, the COVID-19 vaccine is optional for current and prospective City employees.

   As of February 10, 2023, agencies should no longer include the vaccination requirement wording in job postings and should no longer ask for proof of vaccination when onboarding. For current open job postings, agencies will receive guidance from DCAS.

### Employees who Resigned/Retired

1. **Are employees who resigned or retired around the time the vaccine requirement was implemented eligible to be reinstated?**
   Agencies should follow the Personnel Rules of the City of New York concerning reinstatement of permanent, competitive or labor class employees who have resigned or retired. Agency personnel officers should work with DCAS to reinstate these employees.

   Represented employees who resigned or retired after signing the waiver regarding their return are not eligible for reinstatement.

   Employees who executed the Extended LWOP waivers are permitted to seek reinstatement.

updated 2/6/23

**Terminated Employees**

1. **Are employees who were terminated due to their failure to comply with the vaccination mandate eligible to be reinstated?**

   A. Permanent Competitive and Labor Class employees:

   - Includes employees who have completed a probationary term in a permanent position in the competitive or labor class, including uniformed employees.

   - These employees are **eligible** for reinstatement if the employee submits a request for reinstatement via email or otherwise in writing, within one year of their date of dismissal.

     o Employees who were terminated effective February 11, 2022, may submit requests for reinstatement to their former agency by March 10th, 2023. All other requests must be made within one year of the termination date.

     o Agencies may take into consideration if an employee had previously requested reinstatement, prior to the Mayor's February 6, 2023 announcement.

   - Process:

     o Former employee requests reinstatement from their agency within the one year timeframe.

     o Agency reviews request and determines if there is a vacancy available and whether to rehire.

       ▪ The decision to reinstate a terminated employee is discretionary.
       ▪ The agency may reinstate the applicant if it determines that the reasons provided have merit.
         ➢ The analysis should involve a review of all relevant, specific facts and circumstances pertaining to the applicant.
         ➢ This may include a review of the applicant's documented work performance, including performance evaluations, disciplinary history, compliance with the agency's time and leave requirements and compliance with the City's EEO policies.

     o If applicable, former employee is instructed to apply for vacant position, following the standard agency hiring process.

     o Former employee must agree to waive back pay, civil service rights, in writing.

     o Former employee is onboarded and agency works with DCAS to reinstate employee to civil service title.

   B. All other employees:

   - Includes probationary, provisional and non-competitive employees.

   - These employees are **not eligible** to be reinstated to their former titles. However, as EO75 and 76 have been rescinded, they may apply to any

updated 2/6/23

open City position without needing to show proof of vaccination.

2. **What are the terms of reinstatement?**

   A. <u>Permanent Competitive and Labor Class employees:</u>
   - These employees are **eligible** for reinstatement if the employee submits a request for reinstatement via email or otherwise in writing, within one year of their date of dismissal.
   - No Break in service
   - Entitled to full seniority
   - No change to salary
   - Title entry date: Does not change
   - City start date: Does not change

   B. <u>Probationary employees:</u>
   - These employees are not eligible for reinstatement.
   - These employees are eligible to be rehired.
   - These employees may request restoration to the civil service list, if still in existence
     - If appointed to the same agency and same title from the list, the previously served probationary term counts towards the completion of the probationary period.
     - If appointed to a new agency, employee will be required to serve the full term probationary period, unless the agency head elects to credit such person with the time therefore served.
     - New title entry date
     - New City start date
     - New seniority

   C. <u>All other employees- Includes provisional, non-competitive</u>
   - These employees are not eligible for reinstatement.
   - These employees are eligible to be rehired:
     - If break in service of more than 31 calendar days:
       - New title entry date: This date would reflect their rehire date in the title they are rehired in.
       - New City start date.

3. **Are employees who were terminated for failure to comply with the vaccine mandate eligible for rehire?**

   Yes, employees who were terminated due to the vaccine mandate are eligible for rehire by any City agency, with the understanding they meet all conditions for employment in the rehire position and haven't otherwise signed a waiver indicating they will not return. However, any rehire of any former employee is up to the discretion of the agency head.

**Face Coverings**

updated 2/6/23

1. **Do all employees and visitors have to wear a face covering?**

   Every City employee and visitor able to medically tolerate a face covering still must wear a face covering that covers the employee's mouth and nose in the following circumstances:

   - When interacting with members of the public in an indoor setting;
   - during days 6 to 10 after infection with COVID-19 upon returning to the work site; and
   - if the employee is employed at a state-regulated health care setting, adult care facility or nursing home; correctional facility; or homeless or domestic violence shelter.

2. **Do employees with shortened quarantine periods have to increase their mask protection?**
   Yes. The employee must be able to consistently and correctly wear a well-fitting face mask, a higher-level mask such as a KN95, or a fit-tested N95 respirator while at work from day 6 to day 10. The mask should fit with no air gaps around the edges.

3. **If an employee has a Reasonable Accommodation because they are medically unable to tolerate a face covering, are they subject to a shortened quarantine period?**
   Employees with a Reasonable Accommodation because they are unable to medically tolerate a face covering are subject to the 10 day quarantine period.

**Reasonable Accommodations**

1. **What if an employee has been <u>granted</u> a reasonable accommodation to be exempt from the COVID-19 vaccine mandate?**
   Effective February 10, 2023, unvaccinated employees are no longer required to submit to weekly PCR testing or wear a face mask, except in circumstances outlined in the Commissioner's Directive 2020-1. EEO Officers should notify individuals who have a vaccine exemption reasonable accommodation that the accommodation is no longer necessary and ends effective February 10, 2023.

2. **What if a current or prospective employee has a <u>pending</u> reasonable accommodation request seeking to be exempt from the COVID-19 vaccine requirement?**
   Effective February 10, 2023, agency EEO Offices will deny these reasonable accommodation requests as moot since the COVID-19 vaccination is no longer required.

3. **Some employees with serious health issues are working from home as a reasonable accommodation because of a high-risk workplace environment due to COVID-19. Do their reasonable accommodations end?**
   No, their reasonable accommodations do not automatically end as a result of the new policy. Their reasonable accommodations will continue to be evaluated and reassessed on a case-by-case basis.

4. **What happens to employees who do not currently have reasonable accommodations or their reasonable accommodations were declined because it was assumed that everyone at the office was vaccinated?**

updated 2/6/23

Employees are able to apply for a reasonable accommodation with their EEO Office at any time and they will be assessed on a case-by-case basis.

5. **What if employees resigned because their reasonable accommodations were denied? What should they do if they want to work for the city again?**
   These employees will be subject to the same policy as any other employees who resigned from city employment or were terminated as a result of their failure to comply with the vaccine mandated.

**Policies Still in Effect**

1. **What other COVID-19 related policies are still in effect?**
   - The COVID-19 Leave Policy is still in effect.
   - Leave Policy for Employees to Get Vaccinated is still in effect.
   - Leave Policy to Accompany Children to Get Vaccinated is still in effect.
   - Commissioner's Directive 2020-1 on Face Coverings.
   - The City's COVID-19 Emergency Order (Emergency Executive Order 323) is still in effect, governing the City's authority to maintain open meeting laws, and open restaurants, and apply for COVID-19 FEMA reimbursement.

**Where can I find…**
- Vaccination sites: www.nyc.gov/vaccinefinder
- Vaccination appointments: https://vax4nyc.nyc.gov/patient/s/ and 877-VAX-4-NYC
- How to schedule an at home vaccine appointment: www.nyc.gov/homevaccine and 877-VAX-4-NYC
- Free COVID-19 Testing and Treatment:www.nyc.gov/covidtest
- COVID-19 Test Site Finder: https://maps.nyc.gov/covid-testing/#/ A doctor or nurse to talk with about my vaccination concerns: call 311 and ask to talk to a clinician about COVID-19 vaccination
- Assistance for New Yorkers experiencing Long COVID: www.nyc.gov/aftercare